UNITED STATES of America, Plaintiff,

v.

Joseph H. HANS, Defendant.

No. CR–2–80–21.

United States District Court,
S.D. Ohio, E.D.

Oct. 5, 1982.

Chris Barnes, U. S. Atty. for S. D. Ohio, Patrick Hanley, Asst. U. S. Atty., S. D. Ohio, Cincinnati, Ohio, for plaintiff.

Joseph H. Hans, Columbus, Ohio, pro se.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on defendant's motion to dismiss the indictment on grounds of double jeopardy.

Defendant Joseph H. Hans was indicted in 1980 for violating certain provisions of the federal income tax laws in the years 1973 and 1974. Counts I and III of the four-count indictment charged that Hans had willfully attempted to evade income taxes by filing false and fraudulent tax returns in 1973 and 1974, respectively, in violation of 26 U.S.C. Section 7201. Counts II and IV of the indictment charged that Hans had knowingly made and subscribed materially false statements, under declarations that such statements were made under the penalties of perjury, by understating gross receipts and interest income on his tax returns for 1973 and 1974, in violation of 26 U.S.C. Section 7206(1). Defendant

went to trial on the indictment on September 8, 1980. A jury found the defendant not guilty on the two § 7206(1) counts but was unable to reach a unanimous verdict on either of the § 7201 counts, whereupon a mistrial was declared. In anticipation of being retried on the § 7201 counts, the defendant now moves for dismissal on the ground that retrial will place him in double jeopardy in violation of the Fifth Amendment to the United States Constitution.

## I

In the first trial of this matter, the government produced defendant's federal income tax returns for 1973 and 1974 and sought to prove that defendant received substantial amounts of income during those years which he willfully failed to report on his returns. The government's proof was directed specifically to two separate sources of income: gross receipts from the defendant's private law practice, and interest payments received on funds allegedly invested by the defendant in the Hamilton Acceptance Corporation. The bulk of the government's proof dealt with the defendant's income from his workmen's compensation clients. This evidence included defendant's own office ledger sheets; a number of checks issued by the Ohio Bureau of Workmen's Compensation [OBWC]; and the testimony of some two hundred live witnesses, representing a portion of defendant's workmen's compensation clientele, who in general testified that Hans had represented them before the OBWC, that they had received awards from the OBWC, and that Hans had retained varying portions (usually one-third) of the awards in payment for his services.

To prove that Hans had received unreported interest income, the government presented the testimony of William Swad, a businessman and acquaintance of the defendant. Swad testified that Hans had invested a total of $110,000 in the Hamilton Acceptance Corporation, a finance company owned by Swad. Swad identified two cancelled checks drawn by the Hamilton Acceptance Corporation in 1973 totalling $6,518.22, and a third check in the amount of $1,622.85 which, according to Swad, represented interest payments on Hans' investment. The three checks were made payable to Hans' wife. Swad testified that Mrs. Hans was designated as payee on the checks at the defendant's request.

The government's summary witnesses testified that the evidence established unreported taxable income of $43,853 and income tax due and owing of $22,144 in 1973, and unreported taxable income of $64,879 and tax due and owing of $31,499 in 1974.

Hans' defense consisted mainly of attempting through cross examination to cast doubt upon the implication that he had personally received these various amounts as income. With respect to the OBWC award payments, Hans maintained that he did not personally receive the entire amounts of these payments as claimed. Rather, Hans contended that he used some portions of these monies to pay his clients' medical and litigation costs and forwarded other portions to associates who performed legal services on the cases. With respect to the interest payments about which Swad testified, Hans strenuously attacked the credibility of Swad's testimony by establishing the existence of a longstanding animosity between the two men, and an adulterous relationship between Swad and Hans' wife. Hans did not affirmatively contest at trial that he had made and subscribed the 1973 and 1974 income tax returns in evidence.

In support of his motion to dismiss, the defendant first contends that the offense of willfully making a false tax return is a lesser offense included within the more serious offense of willful tax evasion. Relying on *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) and *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), defendant argues that retrial on the greater offenses of tax evasion after the jury has acquitted on the lesser included offenses of making false returns would place the defendant twice in jeopardy of being convicted for the "same offense." Alternatively, defendant argues that retrial on the § 7201 counts is precluded by the doctrine of collateral estoppel.

**1122**

## II

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life and limb." This constitutional prohibition has been held to provide three separate guarantees: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). In general, the Double Jeopardy Clause presents no obstacle to retrial after a mistrial has justifiably been declared because of a jury deadlock. *E.g., United States v. Perez,* 9 Wheat. (22 U.S.) 579, 6 L.Ed. 165 (1824); *Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *United States v. Brown,* 677 F.2d 26 (6th Cir. 1982). The double jeopardy issue arises here, however, as a consequence of the joinder of four separate counts in the same indictment, and the jury's acquittal on two of those counts.

### A. Defendant's "Same Offense" Argument

In *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the Supreme Court was called upon to decide "whether auto theft and joyriding, a greater and lesser included offense under Ohio law, constitute the 'same offense' under the Double Jeopardy Clause" so as to preclude a second prosecution for the greater offense after the defendant had been convicted of the lesser. 432 U.S. at 164, 97 S.Ct. at 2224. In that case the Court stated the principal test for determining whether two offenses are the same for purposes of barring successive prosecutions:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . .

*Id.* at 166, 97 S.Ct. at 2225. This test, commonly known as the *Blockburger* test, was originally adopted by the Court to resolve double jeopardy issues created by the imposition of multiple sentences for conduct that violates two or more related statutory offenses. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The *Brown* Court held the test to be equally applicable to successive prosecutions: Unless " 'each statute requires proof of an additional fact which the other does not. . .,' the Double Jeopardy Clause prohibits successive prosecutions as well as cumulative punishment." *Brown, supra,* 432 U.S. at 166, 97 S.Ct. at 2225 [citation omitted].

In holding that a second prosecution for the greater offense of auto theft was barred, the Court examined the essential elements of the two offenses, as defined by the Ohio courts, and found that the two offenses were necessarily the "same offense" for double jeopardy purposes:

> As is invariably true of a greater and lesser included offense, the lesser offense . . . requires no proof beyond that which is required for conviction of the greater. . . . The greater offense is therefore by definition the "same" for the purposes of double jeopardy as any lesser offense included in it.

*Id.* at 168, 97 S.Ct. at 2226. *Accord, Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

The defendant here argues that the offenses charged in counts II and IV of the indictment under § 7206(1) are lesser offenses included within the greater offense of tax evasion under § 7201. This requires the Court, first, to identify the statutory elements of each offense.

Section 7201,[1] the "tax evasion" statute, has as its essential elements: (1) willfulness; (2) the existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of the tax. *Sansone v. United States,* 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); *United States v. Voorhies,* 658 F.2d 710 (9th Cir. 1981). In comparison, section 7206(1)[2] requires proof of: (1) willfulness; (2) the making of a return or statement that the defendant did not believe to be true as to every material matter; and (3) the fact that such return or statement was verified by a written declaration that it was made under the penalties of perjury. *See, e.g., United States v. Taylor,* 574 F.2d 232 (5th Cir. 1978).

It is immediately apparent, in considering the elements of these two offenses in the abstract, that proof of a violation of § 7201 may or may not also entail proof of a violation of § 7206(1), depending upon what specific evidence is adduced to prove an "evasion" or "attempted evasion" under § 7201. *See United States v. Bender,* 606 F.2d 897 (9th Cir. 1979). Where the specific act alleged to violate § 7201 is the making and filing of a false tax return under penalties of perjury, the proof of such act would necessarily be sufficient to make out a violation of § 7206(1). *Id.; see also United States v. Beasley,* 519 F.2d 233 (5th Cir. 1975), *vacated on other grounds,* 425 U.S. 956, 96 S.Ct. 1736, 48 L.Ed.2d 201 (1976); *United States v. Lodwick,* 410 F.2d 1202 (8th Cir. 1969), *cert. denied,* 396 U.S. 841, 90 S.Ct. 105, 24 L.Ed.2d 92 (1969). At the same time, however, there are other acts that may constitute an attempt to evade

tax. "Congress did not attempt to define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its efforts to do so result in some unexpected limitation." *Spies v. United States,* 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943).

In applying the *Blockburger* test, the analysis focuses "on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial." *Illinois v. Vitale,* 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980); *Iannelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975); *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). Where a statute, like § 7201, prohibits an indefinite class of acts, it is necessary to determine the elements of the offense by examining the particular legal theory relied on by the prosecution. *Pandelli v. United States,* 635 F.2d 533, 538–39 (6th Cir. 1980). *See also Floyd v. Marshall,* 538 F.Supp. 381, 385 (N.D. Ohio 1982). Even when examining the particular legal theory at bar, however, the inquiry still must focus on the essential elements— the ultimate facts that the prosecution is *required* to prove in order to establish the criminal cause of action—rather than the evidence offered. "If each [of two statutes] requires proof of a fact that the other does not," the two offenses are not the same "notwithstanding a substantial overlap in the proof offered to establish the crimes." *Illinois v. Vitale,* 447 U.S. 410, 416 n. 6, 100 S.Ct. 2260, 2265 n. 6, 65 L.Ed.2d 228 (1980); *accord, Iannelli v. United States,* 420 U.S.

---

**1.** § 7201. Attempt to evade or defeat tax.

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both, together with the costs of prosecution.

26 U.S.C.A. § 7201 (1967).

**2.** § 7206(1). Fraud and false statements.

Any person who—

(1) Declarations under penalties of perjury. —Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter * * * shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

26 U.S.C.A. § 7206(1) (1967).

770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975).

▪ Applying these principles to the case at bar, the Court is compelled to conclude that the § 7201 offenses and the § 7206(1) offenses charged in the indictment are not the "same" for double jeopardy purposes. The § 7201 offenses charged in counts I and III of the indictment require proof of at least two essential elements that are not required under § 7206(1): an actual tax deficiency, and an intent to evade or defeat such tax. On the other hand, the § 7206(1) offenses charged in counts II and IV of the indictment require proof of one essential element that is not required under § 7201: the fact that defendant's tax returns were verified by a written declaration that they were made under the penalties of perjury.[3]

Because the § 7201 counts and the § 7206(1) counts in the indictment each require proof of a fact that the other does not, defendant's "same offense" argument must be rejected. *Illinois v. Vitale, supra,* 447 U.S. at 416, 100 S.Ct. at 2265; *Brown v. Ohio, supra,* 432 U.S. at 166, 97 S.Ct. at 2225; *Iannelli v. United States, supra,* 420 U.S. at 785 n. 17, 95 S.Ct. at 1293 n. 17.

*B. Defendant's Collateral Estoppel Argument*

▪ Defendant's second argument in support of his motion to dismiss the indictment is based on the doctrine of collateral estoppel. There does not appear to be any disagreement between the defendant and the government as to the basic law to be applied. Collateral estoppel, long established as a rule of federal criminal law, was

expressly incorporated into the scope of Fifth Amendment double jeopardy protections by the Supreme Court in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In essence, the doctrine of collateral estoppel as applied to a criminal prosecution means that a defendant cannot be convicted on the basis of an issue of fact which has been determined in the defendant's favor in a prior criminal proceeding involving the same parties. *Id.* at 443, 90 S.Ct. at 1194.

▪ The "same offense" approach to the Double Jeopardy Clause and the doctrine of collateral estoppel are separate and distinct concepts which may, but do not necessarily, lead to the same result in application. Collateral estoppel may bar a successive prosecution even where two offenses do not constitute the "same offense" under the *Blockburger* test. *Brown v. Ohio, supra,* 432 U.S. at 166 n. 6, 97 S.Ct. at 2225 n. 6. As such, collateral estoppel may provide a defendant additional protection against having to defend repeatedly against the same factual allegations underlying different criminal charges. *Id.* On the other hand, a successive prosecution for the same offense will be barred by the Double Jeopardy Clause even where the defendant cannot utilize collateral estoppel, as, for example, where the defendant was convicted in the prior proceeding.

▪▪ Where a general verdict of acquittal in a prior proceeding is relied on by the defendant to collaterally estop a successive prosecution, the court must examine the record, including the pleadings, evidence, charge, and other pertinent matters to de-

---

**3.** It might be argued that where the making of a false tax return constitutes the basis for both a § 7201 and a § 7206(1) offense, the element of a written perjury declaration required under § 7206(1) is not a sufficient ground for distinguishing between the two offenses, since, presumably, a tax return will always contain such a declaration. It must be noted, however, that § 7206(1) is in essence a perjury statute which always requires proof of a written perjury declaration. This essential element serves to distinguish a § 7206(1) offense, a felony, from the lesser offense of making a false return under § 7207, a misdemeanor. *United States v. Bish-*

*op,* 412 U.S. 346, 357, 93 S.Ct. 2008, 2015, 36 L.Ed.2d 941 (1972). Section 7201, on the other hand, is not directed against perjury per se, but against attempts to evade taxes in any manner. Thus, § 7201 could just as easily be violated by the filing of a false tax return that does not contain a written perjury declaration, so long as the filing is accompanied by a willful intent to evade taxes. Indeed, the indictment in the case at bar discloses that perjury was not alleged by the government in any manner with respect to the § 7201 offenses in counts I and III.

termine "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe v. Swenson, supra,* 397 U.S. at 444, 90 S.Ct. at 1194. Stated otherwise, a defendant cannot rely upon a general verdict of acquittal in a prior proceeding to bar a subsequent prosecution unless it is evident from the record of the first proceeding that the jury necessarily decided, in defendant's favor, an issue of ultimate fact required to be proved by the government in the second trial. *See United States v. Hewitt,* 663 F.2d 1381, 1386–87 (11th Cir. 1981); *United States v. Brown,* 547 F.2d 438, 441 (8th Cir. 1977); *Johnson v. Estelle,* 506 F.2d 347, 350 (5th Cir. 1975); *United States v. Tramunti,* 500 F.2d 1334, 1336 (2d Cir. 1974).

Hans argues that the jury in the first trial, by acquitting him on the § 7206(1) offenses charged in counts II and IV of the indictment, necessarily found that the government had failed to prove that Hans willfully made a false statement as to any material matter on his 1973 and 1974 income tax returns. The government here concedes that if this were true, it would be collaterally estopped from retrying Hans on the § 7201 offenses charged in counts I and III of the indictment, which allege that Hans attempted to evade taxes by filing false tax returns in 1973 and 1974. *See* Response to Motion to Dismiss on Double Jeopardy Grounds, at p. 2. The government maintains, however, that the jury's acquittal on the § 7206(1) counts cannot be interpreted as defendant argues.

The government cites two factors from the first trial in arguing that collateral estoppel does not apply: first, a purportedly ambiguous charge to the jury with respect to the § 7206(1) counts which, the government contends, led the jury to believe that they should acquit Hans unless they found that Hans had willfully understated *both* gross receipts *and* interest income on his returns; and second, the failure of the jury to reach unanimous verdicts of acquittal on the § 7201 evasion counts. The government argues that it is reasonable to infer from these two factors taken together, that

the jury was persuaded that Hans had not willfully understated *either* gross receipts *or* interest income, but was not unanimously persuaded that Hans had truthfully stated *both*. Thus, it is asserted that collateral estoppel cannot be used here to bar the government from relitigating the issues of whether Hans' tax returns were false with respect to either gross income or interest income, because it cannot be determined with certainty that the jury necessarily decided the ultimate issue of fact—the alleged falsity of the tax returns—in Hans' favor.

The Court is unpersuaded by the government's reasoning. First of all, the Court rejects the major premise upon which the government's theory of "ambiguous acquittal" rests. Having reviewed the charge to the jury in its entirety, the Court does not believe that the jury was misled into thinking that it could convict Hans on the § 7206(1) counts only if it found that Hans had willfully understated both gross receipts and interest income. It is true, as the government notes, that in instructing the jury as to the nature of the charges against the defendant, the Court recited in the conjunctive the specific allegations of understated gross receipts and understated interest income. This was the language used by the government in the indictment. These portions of the charge, if taken alone and out of context, could conceivably have been misleading in the manner the government suggests. As is always the case, however, the charge must be considered in its entirety. Here, the jury was read the language of § 7206(1) verbatim, which clearly conveyed that a violation consisted of the making of a return which the defendant did not believe to be true as to *every material matter.* After reviewing the entire record of this case, the Court believes that the most reasonable inference to be drawn from the jury's acquittal on counts II and IV is that the jury simply was not persuaded beyond a reasonable doubt that Hans had willfully made a tax return which he did not believe to be true as to every material matter.

Even were the Court to accept the government's "ambiguous acquittal" theory, however, another more serious difficulty arises. Accepting as correct both the government's premises and its conclusion that the jury's acquittal was ambiguous, the possible ways of interpreting the acquittal are limited to three:

(1) The jury unanimously found that Hans did not willfully understate his gross receipts, but were undecided about his interest income.

(2) The jury unanimously found that Hans did not willfully understate his interest income, but were undecided about his gross receipts.

(3) The jury unanimously found that Hans did not willfully understate either his gross receipts or his interest income.

Accepting the government's argument that collateral estoppel may not be invoked leads to a rather disquieting result under these circumstances: The government would be permitted a second chance to prove that Hans willfully understated both his gross receipts and his interest income even while conceding that the jury in the first trial had *necessarily* found in favor of Hans on one or the other, or both, of these two issues. Of logical necessity, the result which the government advances would place the defendant in the position of having to litigate for a second time at least one factual issue (out of two) that has previously been finally decided in his favor.

 Collateral estoppel, as incorporated into the protections of the Double Jeopardy Clause, protects criminal defendants from redetermination of evidentiary facts as well as ultimate facts. *United States v. Lee,* 622 F.2d 787, 790 (5th Cir. 1980); *Benson v. Superior Court,* 507 F.Supp. 975 (1981). The Court is well aware of the rule that a defendant, in raising collateral estoppel as a defense, carries the burden to show that the issue which he seeks to foreclose from relitigation was necessarily decided in his favor in the prior proceeding. *See, e.g., United States v. Hewitt,* 663 F.2d 1381, 1387 (11th Cir. 1981).

However, the Court does not believe, nor has it found any authority so holding, that this burden is so heavy as to require a defendant twice to defend against two factual allegations, one or both of which have previously been decided in his favor, merely because it is impossible to determine with certainty which one, or whether both, were so decided. In the Court's view, the very limited ambiguity which the government asserts to exist here in the jury's acquittal on counts II and IV would have to be resolved, in accordance with the protections of the Double Jeopardy Clause, in favor of the defendant.

 In a retrial of the defendant on counts I and III, the government would be required to prove as essential elements that Hans falsified his 1973 and 1974 tax returns, and did so willfully. The government concedes that its evidence and its theory of proof in a retrial would be identical to those in the first trial. *See* Government's Response to Motion for Bill of Particulars. The government also appears to concede that, absent the ambiguity which it claims to exist in the verdicts rendered by the jury in the first trial, it would be estopped from attempting to prove these facts a second time. In view of the foregoing discussion, the Court finds that retrial on counts I and III would impermissibly require the defendant to relitigate and risk conviction on an issue or issues of fact that have previously been decided by a jury in his favor, and therefore, that the government is estopped from pursuing a second prosecution on those counts.

WHEREUPON, upon consideration and being fully advised in the premises, the Court determines that defendant's motion to dismiss the indictment is meritorious, and it is hereby GRANTED. The indictment is DISMISSED.

IT IS SO ORDERED.